IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAWNA ROCHELLE BIGGS,

              Plaintiff,                                  07cv0007
                                                       **Electronically Filed**

   v.

HOUSING AUTHORITY OF THE CITY OF
PITTSBURGH,

              Defendant.


<u>**MEMORANDUM OPINION**</u>

**February 28, 2007**

    **Introduction.**

    Appellant Dawna Rochelle Biggs, the debtor in a Chapter 7 bankruptcy proceeding, appeals the November 14, 2006 Order of the United States Bankruptcy Court for the Western District of Pennsylvania granting creditor Appellee Housing Authority of the City of Pittsburgh's ("HACP") motion for relief from the automatic stay for bankruptcy, 11 U.S.C. § 362, thus permitting HACP to commence eviction proceedings in state court against Ms. Biggs based upon her previous failure to keep up with her rent payments and to pay accumulated arrearage.  After careful consideration of the thorough and well advocated briefs in support and in opposition to reversal of the decision, this Court holds that relief from the automatic stay in this case and any eviction proceedings in state court related to her bankruptcy proceedings and discharge of her debt are precluded by section 525(a) of the Bankruptcy Code, 11 U.S.C. § 525(a), and will therefore vacate the Order of November 14, 2006.

**Standards of Review.**

District courts have jurisdiction over appeals from the final orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  Orders lifting an automatic stay and, often, orders denying motions to lift automatic stays, are considered final and appealable orders.  *See In re Graves*, 33 F.3d 242, 246 n. 9 (3d Cir. 1994)*;  United States v. Pelullo*, 178 F.3d 196, 200 (3d Cir. 1996); *In re CGE Shattuck, LLC*, 255 B.R. 334 (Bankr.Panel 1ˢᵗ Cir. 2000) (grant or denial of motion for relief from automatic stay, being analogous to order lifting or refusing to lift preliminary injunction, is a final order, from which appeal will lie) (collecting cases).

The standard of appellate review is the same for the district court and for the Court of Appeals, both of which review findings of fact for clear error and exercise plenary review over questions of law.  *In re Mintze*, 434 F.3d 222, 227-28 (3d Cir. 2006);  *In re Schick*, 418 F.3d 321, 323 (3d Cir. 2005).   In reviewing decisions denying relief from the automatic stay provisions of the Bankruptcy Code, it is well-established that courts apply the abuse of discretion standard. *Baldino v. Wilson*, 116 F.3d 87, 89 (3d Cir. 1997). An abuse of discretion exists whenever a judicial action is "arbitrary, fanciful, or clearly unreasonable," *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002), or when improper legal standards, criteria, or procedures are used. *Stuebben v. Gioioso (In re Gioioso)*, 979 F.2d 956, 959 (3d Cir. 1992) (bankruptcy court abuses its discretion when its ruling is founded on an error of law); *In re FRG*, 115 B.R. 72, 73 (E.D.Pa. 1990) (abuse of discretion exists whenever a judicial action is "arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used.") (citations omitted).

**Factual Background and Procedure.**

The Bankruptcy Court did not file a written opinion, nor did it otherwise make any findings of fact or conclusions of law when it issued its order on November 14, 2006 granting HACP's motion for relief from the automatic stay. However, there do not appear to be any significant disputes of fact (if any) and the parties essentially agree on the statement of the facts material and necessary to decide the legal issues presented. Therefore, this appeal may be decided on the agreed-to facts, as a matter of law.

Since March 1995, Appellant and her now 13 year old son have resided in a subsidized housing community in Pittsburgh, Pennsylvania known as the Bedford Dwellings that are owned and operated by HACP. All HACP leases, including Appellant's, are for an initial one year period, followed thereafter by month-to-month leases which are renewed monthly unless "good cause" exists for termination.

In December 2003, HACP imposed a retroactive surcharge against Ms. Biggs for rent delinquencies, and the parties entered into an agreement for repayment of arrearage according to a monthly installment schedule, which payments were in addition to her monthly rent of $113.00. However, Appellant soon found herself unable to meet these financial obligations and became delinquent again, so in February 2004, HACP initiated eviction proceedings in state court.

After the local District Justice entered judgment for HACP and issued an order for eviction and notice to vacate, on March 24, 2004 Appellant filed for Chapter 13 bankruptcy which had the automatic effect of staying all state court proceedings. Appellant submitted and the Bankruptcy Court approved a Chapter 13 Plan for Reorganization, which included payments in addition to her monthly rent of approximately $1,600 in arrearage in installments over 36

3

months, but she was unable to keep her commitments under the Plan.  Her last payment to the

Trustee was on September 7, 2005.

HACP filed a Motion for Relief from Stay on September 21, 2006, "due to the Debtor's

failure to make payments to the Trustee."  Brief for Appellee at 3.  By then, Appellant's

accumulated arrearage was approximately $3,700.  On October 6, 2006, Appellant voluntarily

converted her Chapter 13 reorganization Bankruptcy to a Chapter 7 Bankruptcy seeking to have

her debt discharged, and the Bankruptcy Court approved the conversion on October 23, 2006.

Appellant asserts that, since that time, she has made and will continue to make all current

monthly rental payments.

Appellee adds in its recitation of the facts, and Appellant does not dispute, that the

Chapter 7 Trustee did not assume her lease, and therefore, by operation of law, 11 U.S.C. §

365(d)(1), the lease was deemed "rejected" after 60 days had passed without assumption of the

lease by the Trustee.

On November 14, 2006, HACP presented its Motion for Relief from Stay to the

Honorable M. Bruce McCullough, Chief Bankruptcy Judge for the Western District of

Pennsylvania.  The Bankruptcy Court heard argument on the motion, but declined Appellant's

request for an evidentiary hearing and/or for submission of briefs.  Following the argument, the

Bankruptcy Court granted HACP's motion without findings of fact, conclusions of law or legal

analysis on the record or in writing.  On November 27, 2006, the Bankruptcy Court denied

Appellant's Motion to Stay his order pending appeal to this Court.

Ms. Biggs then filed a timely Notice of Appeal to this Court. On February 14, 2007,

Appellant filed a Motion to Stay (doc. no. 10) eviction proceedings with this Court, asserting that

4

she received, from HACP earlier that day, a notice to vacate the premises on or before February

20, 2007, or face forcible eviction. In its response, HACP amicably agreed to "suspend the

eviction proceeding" until at least seven days following this Court's decision in the pending

appeal, and, based upon this wise decision, this Court denied Appellant's motion to stay as moot

on February 16, 2007.

### 11 U.S.C. Section 525(a) -- The "Anti-discriminatory" Provision.

Section 525 of the Bankruptcy Code provides, in relevant part:

### Protection against discriminatory treatment

(a) Except as provided in [three specific acts related to agriculture], a
governmental unit may not deny, revoke, suspend, or refuse to renew a license,
permit, charter, franchise, or other similar grant to . . . a person that is or has
been a debtor under this title or a bankrupt or a debtor under the Bankruptcy
Act . . . solely because such bankrupt or debtor is or has been a debtor under
this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent
before the commencement of the case under this title, or during the case but
before the debtor is granted or denied a discharge, or has not paid a debt that is
dischargeable in the case under this title or that was discharged under the
Bankruptcy Act.

11 U.S.C. § 525(a).

This case presents an issue of first impression in this Court, and only one Court of

Appeals has decided the issue. In *In re Stoltz*, 315 F.3d 809 (2d Cir. 2002), the creditor/public

housing authority, the Brattleboro Housing Authority, moved for relief from automatic stay in

order to evict Ms. Stoltz, a Chapter 7 debtor, from her publicly subsidized apartment based on

her nonpayment of discharged prepetition rent. The United States Bankruptcy Court for the

District of Vermont, granted the motion, but the United States District Court reversed and

reinstated the automatic stay.

5

On appeal, addressing an issue of "apparent first impression" among the various Circuit Courts of Appeals, the United States Court of Appeals for the Second Circuit affirmed, holding that: (1) a public housing lease is a grant "similar" to a "license, permit, charter, or franchise," within the meaning of section 525(a) of the Bankruptcy Code that protects debtors from discrimination by governmental units; (2) the debtor's eviction was "solely because" of discharged prepetition rent, within the meaning of this anti-discrimination provision; and (3) the section of the Code setting forth the anti-discrimination provision is more specific than another section of the Code providing that landlords in general may evict debtor-tenants for nonpayment of discharged prepetition rent, and so, to the extent these sections conflict, the former "trumps" the latter.  The Court of Appeal's summary of the law and analysis, in most pertinent part, is as follows:

> Section 525(a) evolved from *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), a seminal bankruptcy case in which the Supreme Court struck down a state statute that withheld driving privileges from debtors who failed to satisfy motor-vehicle-related tort judgments against them, even if the judgments were discharged under bankruptcy law. The Supreme Court used the Supremacy Clause to invalidate the state statute, finding that it discriminated against debtors in a manner that frustrated and was contrary to the fresh start principles of the Bankruptcy Act. *Id.* at 649-52, 91 S.Ct. at 1711-13. Congress thereafter signaled its approval of the *Perez* holding by enacting section 525(a), which prohibits bankruptcy-based discrimination by governmental units against debtors.
>
> \*   \*   \*
>
> . . . Notably, the text of Section 525(a) does not limit its scope to the facts presented in *Perez*. Section 525(a) applies to any governmental unit, not just a State agency or department; it covers not only licenses, but also permits, charters, franchises, and other similar grants . . . .

2. Case Law Development of Section 525(a)

6

In the nearly twenty-four years that have passed since its enactment, section 525(a) has been interpreted by the courts to protect debtors from discrimination in a wide variety of contexts . . . .

Despite more than twenty years of judicial consideration, however, the scope of Section 525(a)'s protection in the context of public housing is still unsettled. No circuit court has yet spoken on the issue, and the bankruptcy courts and district courts that have done so have done so inharmoniously. It is undisputed that a public housing authority is a governmental unit within the meaning of 525(a). *See* 11 U.S.C. § 101(27); *see also In re Robinson*, 169 B.R. 171, 176 (N.D.Ill. 1994), *In re Szymecki*, 87 B.R. 14, 16 (Bankr.W.D.Pa. 1988). BHA has conceded as much in this appeal. Instead, the debate over section 525(a) in the public housing context has centered on (1) the precise contours of the "other similar grant [ ]" at stake, *compare Johnson v. Chester Hous. Auth. (In re Johnson)*, 250 B.R. 521, 530 (Bankr.E.D.Pa. 2000) (determining that the "other similar grant [ ]" protected by section 525(a) was the public housing tenant's inseparable rights to lease a residence and to be charged rent reductions established for public housing residents), and *In re Curry*, 148 B.R. 966, 972 (Bankr.S.D.Fla. 1992) (finding eviction would violate section 525(a) because it would revoke the governmental grant of a rent subsidy), *with In re Bacon*, 212 B.R. 66, 74-75 (Bankr.E.D.Pa. 1997) (finding eviction permissible because section 525(a) protects only debtor-tenant's future right to participate in public housing program), *and* (2) whether a public housing authority in this situation seeks to evict the public housing tenant "solely because" of the discharge of prepetition defaults, *compare Robinson v. Chicago Hous. Auth. (In re Robinson)*, 169 B.R. 171, 176 (Bankr.N.D.Ill. 1994) (distinguishing between eviction solely because debtor-tenant failed to pay dischargeable debt and eviction because debtor-tenant stopped paying rent), *and Hous. Auth. of Pittsburgh v. James (In re James)*, 198 B.R. 885, 888 (Bankr.W.D.Pa. 1996) (distinguishing between eviction solely because of the failure to pay dischargeable debt and eviction (1) because the lease is no longer in effect because it was deemed rejected, (2) because of housing authority's duty to taxpayers to ensure that tenants pay rent, and (3) because of housing authority's obligation to other applicants to make housing available to them), *with Bacon*, 212 B.R. 66, 75 (disagreeing with "[t]he illusory distinction between seeking eviction for not paying a dischargeable debt as opposed to eviction for stopping the payment of rent").

C. The Public Housing Grant Protected Under Section 525(a)

In addition to its concession that it falls within section 525(a)'s definition of a "governmental unit," BHA also concedes that Stoltz's prepetition defaults have been discharged, and that it may not discriminate

7

against Stoltz with regard to a section 525(a) grant because of her prepetition defaults. Nonetheless, BHA argues that the eviction it seeks is not proscribed by section 525(a) because a public housing lease is not an "other similar grant [ ]" within the meaning of section 525(a). BHA appears to argue that a public housing tenant's future right to participate in the public housing program [as the Pennsylvania Bankruptcy Courts held in *Bacon* and *James*] is the only protected public housing grant under section 525(a). In this scenario, Stoltz's protected public housing grant would not be disturbed by eviction because eviction would not limit her right to participate in the public housing program in the future. If this line of thinking were correct, section 525(a) would prohibit BHA only from denying Stoltz, upon reapplication, a future lease because of her prepetition defaults.

We reject this artificially narrow construction of section 525(a) because the plain language of the provision indicates that eviction would revoke a protected grant, i.e., the lease, in violation of section 525(a). . . .

The text of section 525(a) states that it protects a debtor's interest in a "license, permit, charter, franchise, or other similar grant" provided by a governmental unit. The term "other similar grant" is not defined by the code. In common parlance, a grant is "a transfer of property by deed or writing." Merriam Webster's Collegiate Dictionary 507 (10th ed.2000). As a legal term, a grant is "[a]n agreement that creates a right of any description other than the one held by the grantor. Examples include leases, easements, charges, patents, franchises, powers, and licenses." Black's Law Dictionary 707 (7th ed.1999) (emphasis added). Similarly, a lease is "[a] contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration." Id. at 898. Thus, a public housing lease is a grant by which a public housing authority conveys to a public housing tenant the right to use and occupy public housing in exchange for rent. The only question that remains is whether a public housing lease is a grant "similar" to a "license, permit, charter, [or] franchise."

\*   \*   \*

Public housing leases, too, are property interests unobtainable from the private sector and essential to a debtor's fresh start. Public housing leases are, by definition, obtainable only from governmental entities. Furthermore, a public housing lease is essential to a debtor's fresh start. An individual qualifies for public housing because he or she cannot afford housing at prevailing market rates. In light of the notoriously lengthy waiting lists that may exist for public housing, *see, e.g., Housing Auth. Of Pittsburgh v. Collins (In re Collins)*, 199 B.R. 561, 568 n. 13 (Bankr.W.D.Pa. 1996), an evicted

8

> debtor-tenant, along with any dependents, would quite possibly become
> homeless- a status not conducive to economic survival. A debtor-tenant's future
> right to participate in public housing programs- on a space available basis-
> would therefore be of little or no practical value upon eviction. A debtor-
> tenant's "entire economic status [therefore] is dependent on" his or her current
> public housing lease, *In re Day*, 208 B.R. 358, 367 (Bankr.E.D.Pa. 1997),
> which is his or her "single most significant material possession," *In re Whitsett*,
> 163 B.R. 752, 755 (Bankr.E.D.Pa. 1994). Eviction- induced homelessness
> would "seriously affect the debtors' livelihood [and] fresh start." H. Rep. No.
> 95-595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323.
> Conversely, preventing homelessness promotes the Code's fresh start policy by
> helping debtors maintain steady employment and self-sufficiency.

*In re Stoltz*, 315 F.3d 87-90 (rejecting the *Bacon* and *James* bankruptcy courts' restrictive

interpretation of section 525(a) as protecting right to *future* subsidized housing, but not to

continued subsidized housing on an existing lease, to which the tenant accrued a debt for failure

to pay rent) (footnotes and numerous additional citations omitted).

This Court adopts the *Stoltz* reasoning as persuasive because it is entirely consistent with

the plain meaning of the language of section 525(a).   Pursuant to section 525(a), Appellant

qualifies for statutory "protection against discriminatory treatment" if several statutory

components exist and converge, namely: (a) a "governmental unit" attempts to (b) "deny, revoke,

suspend, or refuse to renew" a (c) "license, permit, charter, franchise, or other similar grant to"

(d) a "person that is or has been a debtor under this title or a bankrupt or a debtor under the

Bankruptcy Act" etc. (e) "solely because such bankrupt or debtor is or has been a debtor under

this title or a bankrupt or debtor under the Bankruptcy Act" "or has not paid a debt that is

dischargeable in the case under this title . . ."

This Court finds that, by the plain meaning of these terms and the undisputed facts of this

case, all of the necessary individual components are present and converge.   Therefore, Appellant

is entitled to the protection of section 525(a) which prohibits the Bankruptcy Court from lifting

the automatic stay, and prevents the HACP from seeking to evict her from her residence based

upon her non-payment of rent and the debt she accrued that is dischargeable or will soon be

discharged in her Chapter 7 bankruptcy proceeding.

**Application of Section 525(a) to this Appeal.**

(a) <u>Governmental unit</u>.

HACP does not dispute that it is a "governmental unit."

(b) <u>Deny, revoke, suspend, or refuse to renew</u>.

HACP contends that it has not done and will not do any of these prohibited actions by

evicting Appellant and her son, because the lease merely has been "rejected" by operation of law,

11 U.S.C. § 365(d)(1), and by the passage of 60 days without the Chapter 7 Trustee assuming the

lease. (Section 365(d)(1) provides that the "trustee, subject to the court's approval, may assume

or reject any executory contract or unexpired lease of the debtor" and in a Chapter 7 case, if the

trustee "does not assume or reject an executory contract or unexpired lease of residential real

property or of personal property of the debtor within 60 days after the order for relief, or within

such additional time as the court, for cause, within such 60- day period, fixes, then such contract

or lease is deemed rejected.").

Given this Court's interpretation of "a license, permit, charter, franchise, or other similar

grant" in the following section, HACP's attempted eviction of Appellant may accurately be

deemed the "suspension" or "revocation" of her right to continue to receive subsidized housing,

whether or not the lease is deemed to have been rejected by operation of law, but, under *any*

definition of  "license, permit, charter, franchise, or other similar grant," HACP has, *at a*

minimum, *"refused to renew"* Appellant's month-to-month lease which, in the absence of "good

cause," would have been automatically renewed each month.  Moreover, even if deemed

"rejected" under the Bankruptcy Code, under Pennsylvania law the lease is not terminated until

there is actual eviction of the tenant and possession by the landlord. *See In re Valentin*, 309 B.R.

715, 718 (Bankr. E.D.Pa. 2004) (under Pennsylvania law, a lease is not terminated until the

eviction of the leasee is completed" citations omitted ); *In re Sudler*, 71 B.R. 780, 785

(Bankr.E.D.Pa. 1987) (under the "controlling Pennsylvania state landlord/tenant law, the Debtor's

tenancy could not be terminated unless and until 'actual delivery of the real property' was made"

to the housing authority).

(c) <u>License, permit, charter, franchise, or other similar grant</u>.

Although not as obvious as some of the other terms, "other similar grant" has been

interpreted by the *overwhelming* majority of federal district and bankruptcy courts as including

the "grant" of subsidized housing to a qualified low income applicant (although the exact scope

of such grant varies from court to court). *See, e.g.*, *In re Stoltz*, (numerous cases collected);  *In re

Valentin*, 309 B.R. 715 (Bankr.E.D.Pa. 2004 (collecting cases); *In re Oksentowicz*, 314 B.R. 638

(Bankr.E.D.Mich. 2004) (collecting cases); *but see Stoltz* at 315 F.3d 95-97 (Walker, C.J.,

dissenting) (finding that the right of qualified recipients to government subsidized housing may

be a "grant," but not one that is "similar to" the specifically enumerated items in section 525(a),

"license, permit, charter, franchise," each of which shares "a more definite similarity: Each

allows the grant-holder to engage in certain regulated conduct.").  This Court agrees with the

view of the majority that "other similar grants" is a term of inclusion that should not be narrowly

construed, and that it includes the grant of the right of otherwise qualified recipients to reside in

11

government subsidized housing.

(d) Person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, etc..

There is no dispute that Appellant is a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or who was "insolvent during the case but before the debtor [was] granted or denied a discharge."

(e) Solely because.

Section 525(a) offers protection to the recipient of government permits, charters, franchises, and other similar grants if the government units denial, suspension, revocation or refusal to renew is "solely because" the recipient is or has been a debtor under this title or insolvent or a bankrupt or debtor under the Bankruptcy Act, or has not paid a dischargeable debt. There is no dispute that Appellant is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act," and the parties agree that Appellant's debt is a dischargeable debt that is, in fact, on the verge of being discharged by the Bankruptcy Court.   The real question, in this and in most cases to have considered the issue, is whether the actions of the public housing authority in attempting to evict Appellant were undertaken "solely because" of her being a debtor or for not paying her dischargeable debt.   Under the relevant case law, the answer to that question is "Yes."

"Solely because" means "nothing more or less than that the failure to pay a dischargeable debt must alone be the proximate cause of the" governmental unit's denying, revoking, suspending or refusing to renew a license, permit, charter, franchise, or other similar grant. *FCC v. NextWave Personal Commc'n., Inc.*, 537 U.S. 293, 301 (2003).  In *NextWave*, cancellation of a

12

broadband license was the event which triggered the debtor's section 525(a) challenge.  Speaking

for the 7-2 majority, Justice Antonin Scalia held that section 525(a) of Bankruptcy Code

prohibited the FCC from revoking broadband licenses held by NextWave, which had declared

bankruptcy under Chapter 11 upon its failure to make timely installment payments to FCC for

purchase of the licenses, explaining as follows:

> The FCC has not denied that the proximate cause for its cancellation of the licenses was NextWave's failure to make the payments that were due. It contends, however, that § 525 does not apply because the FCC had a "valid regulatory motive" for the cancellation. . . . In our view, that factor is irrelevant. When the statute refers to failure to pay a debt as the sole cause of cancellation ("solely because"), it cannot reasonably be understood to include, among the other causes whose presence can preclude application of the prohibition, the governmental unit's motive in effecting the cancellation. Such a reading would deprive § 525 of all force. It is hard to imagine a situation in which a governmental unit would not have some further motive behind the cancellation- assuring the financial solvency of the licensed entity, . . . or punishing lawlessness, . . . or even (quite simply) making itself financially whole. Section 525 means nothing more or less than that the failure to pay a dischargeable debt must alone be the proximate cause of the cancellation-the act or event that triggers the agency's decision to cancel, whatever the agency's ultimate motive in pulling the trigger may be.

> Some may think (and the opponents of § 525 undoubtedly thought) that there ought to be an exception for cancellations that have a valid regulatory purpose. Besides the fact that such an exception would consume the rule, it flies in the face of the fact that, where Congress has intended to provide regulatory exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly, rather than by a device so subtle as denominating a motive a cause. . . . These . . . exceptions would be entirely superfluous if we were to read § 525 as the Commission proposes- which means, of course, that such a reading must be rejected.

*NextWave*, 537 U.S at 30102 (citations omitted).

In the wake of *NewWave*, there is no doubt that Appellant is a bankrupt or debtor under

the Bankruptcy Act, and that HACP's refusal to renew Appellant's lease and its attempt to evict

her from her rental unit is "solely because" of her failure/ inability to pay a debt that is

dischargeable in the case under Chapter 7.  In fact, the HACP does not even suggest that there

was some other motive or "good cause" for seeking to evict Ms. Biggs from her residence, and

acknowledges that it sought eviction in state court "due to the Debtor's failure to make payments

to the Trustee."  Brief for Appellee at 3.

As a straightforward matter of statutory construction, therefore, section 525(a) operates in

this case to protect Ms. Biggs from having the automatic stay lifted and, more importantly, from

being evicted in state court proceedings; it also prohibits HACP from refusing to renew

Appellant's lease because of her failure to make payments.

This result will not open the floodgates to persons who might try to take advantage of the

Bankruptcy Code to the detriment of other qualified applicants for public subsidized housing, as

HACP suggests in its Brief for Appellee.  As Appellant correctly points out, once a public

housing tenant's debt is discharged by Bankruptcy Court (as the parties in this case agree is about

to happen), the tenant will not be able to seek bankruptcy protection again for eight years.  *See* 11

U.S.C.A. § 727(a)(8) ("court shall grant the debtor a discharge, unless . . . (8) the debtor has been

granted a discharge under this section, under section 1141 of this title, or under section 14, 371,

or 476 of the Bankruptcy Act, in a case commenced within 8 years before the date of the filing of

the petition"); *In re Lee*, 148 B.R. 966 (S.D. Fla. 1992) (tenants who choose to discharge back

rent in bankruptcy cannot seek another discharge for, at that time, six years), citing *In re Sudler*,

71 B.R. 780, 787 (Bankr.E.D.Pa. 1987) ("If the landlord's only basis for a claim of termination of

a lease is that the debtor owes pre-petition rent, this basis may not constitute the requisite 'good

cause' especially in light of the fresh start principle of *Local Loan Co. v. Hunt*, 292 U.S. 234,

14

244-245 (1934)." Thus, Appellant's failure to pay rent following discharge of her accrued debt may trigger eviction proceedings in state court which she will be unable to stay through the filing of a bankruptcy petition.

**Conclusion.**

For all of the foregoing reasons, the Court will issue a separate Order of Court vacating the Order of the United States Bankruptcy Court dated November 14, 2006, which will have the effect of reinstating the automatic stay and preventing HACP from pursuing state court eviction proceedings based upon her having been insolvent or a debtor under the Bankruptcy Code or that her accrued debt was dischargeable or actually discharged in her Chapter 7 bankruptcy proceeding.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties